IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| CLARENCE JONES,<br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br>    Defendant. | )<br>)<br>)<br>)   Civil No. 3:15cv307 (HEH)<br>)<br>)<br>)<br>)<br>) |

## REPORT AND RECOMMENDATION

On June 16, 2011, Clarence Jones ("Plaintiff") applied for Social Security Disability Benefits ("DIB") and, for Supplemental Security Income ("SSI") under the Social Security Act ("Act"), alleging disability from a back injury from an automobile accident, with an alleged onset date of February 20, 2011. The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration. Thereafter, an Administrative Law Judge ("ALJ") denied Plaintiff's claims in a written decision and the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.

Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g), arguing that the ALJ erred by failing to give controlling weight to the opinion of one of Plaintiff's treating physicians, failing to properly assess Plaintiff's credibility and finding that Plaintiff's depression and anxiety were less than severe. (Mem. in Support of Pl.'s Mot. for Summ. J. ("Pl.'s Mem") (ECF No. 12) at 4-12.) This matter now comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on the parties' cross-motions

for summary judgment, making the matter now ripe for review.[1] For the reasons that follow, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 10) be GRANTED, that Plaintiff's Motion for Remand be (ECF No. 11) GRANTED, that Defendant's Motion for Summary Judgment (ECF No. 13) be DENIED and that the final decision of the Commissioner be VACATED and REMANDED.

## I. PROCEDURAL HISTORY

On June 11, 2011, Plaintiff filed applications for DIB and SSI, alleging disability from a back injury from an automobile accident, with an alleged onset date of February 20, 2011. (R. at 280-285.) The SSA denied these claims initially on August 23, 2011, and again upon reconsideration on March 15, 2012. (R. at 159, 167, 170.) At Plaintiff's written request, the ALJ held a hearing on December 4, 2013. (R. at 79-119, 172.) On December 26, 2013, the ALJ issued a written opinion, denying Plaintiff's claims and concluding that Plaintiff did not qualify as disabled under the Act, because Plaintiff could perform jobs existing in significant numbers in the national economy. (R. at 70.) On April 23, 2015, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner subject to review by this Court. (R. at 1.)

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court "will affirm the Social Security Administration's disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v.*

---

[1] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments, and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

2

*Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance, and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). To determine whether substantial evidence exists, the Court must examine the record as a whole, but may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). In considering the decision of the Commissioner based on the record as a whole, the Court must "take into account whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 477. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the Court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

The Social Security Administration regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. § 416.920(a)(4); *see Mascio*, 780 F.3d at 634-35 (summarizing the ALJ's five step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. 20 C.F.R. § 416.920(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. 20 C.F.R. § 416.920(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the

regulations. 20 C.F.R. § 416.920(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's residual functional capacity ("RFC"), accounting for the most that the claimant can do despite his physical and mental limitations. 20 C.F.R. § 416.945(a). At step four, the ALJ assesses whether the claimant can perform his past work given his RFC. 20 C.F.R. § 416.920(a)(4)(iv). Finally, at step five, the ALJ determines whether the claimant can perform any work existing in the national economy. 20 C.F.R. § 416.920(a)(4)(v).

### III. THE ALJ'S DECISION

On December 4, 2013, the ALJ held a hearing during which Plaintiff (represented by counsel) and a vocational expert testified. (R. at 79.) On December 26, 2013, the ALJ issued a written opinion, finding that Plaintiff did not qualify as disabled under the Act. (R. at 63-71.)

The ALJ followed the five-step evaluation process established by the Act in analyzing Plaintiff's disability claim. (R. at 64-65). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 20, 2011. (R. at 65.) At step two, the ALJ found that Plaintiff had the severe impairments of decompression and fusion from the T12 to L2 level. (R. at 65.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 66-67.)

In assessing Plaintiff's RFC, the ALJ found that Plaintiff had the RFC to perform light work, with no climbing of ladders, ropes and scaffolds, and no more than occasional climbing of ramps and stairs. (R. at 67.) Plaintiff could occasionally stoop, kneel, crouch and crawl, and frequently balance. (R. at 67.)

At step four, the ALJ found that Plaintiff could not perform his past relevant work. (R. at 69.) At step five, the ALJ determined that Plaintiff could perform other jobs existing in

significant numbers in the national economy. (R. at 70.) Therefore, Plaintiff did not qualify as disabled under the Act. (R. at 70.)

## IV. ANALYSIS

Plaintiff, fifty-one years old at the time of this Report and Recommendation, previously worked as a machine operator. (R. at 280, 285.) He applied for DIB and SSI, alleging disability from a back injury from an automobile accident, with an alleged onset date of February 20, 2011. (R. at 280, 284.) Plaintiff argues that the ALJ erred by affording little weight to the opinion of one of Plaintiffs' treating physicians, failing to properly assess Plaintiff's credibility and finding that Plaintiff's depression and anxiety were not severe. (Pl.'s Mem. at 4-12.) For the reasons set forth below, the Court finds that the ALJ erred in his decision.

### A. The ALJ erred by failing to provide a sufficient reason for the weight afforded to Dr. Mathern's opinion.

Plaintiff injured his back in a motor vehicle accident in February 2011. On March 1, 2011, Dr. Bruce Mathern performed surgery for an L1 burst fracture. (R. at 401-03.) Plaintiff had several follow-up appointments with Dr. Mathern from March to September of 2011. (R. at 460, 462, 464.) On September 20, 2013, Dr. Mathern wrote a letter for the record, opining that Plaintiff had "significant lifting and carrying intolerance of no more than 10 to 15 pounds on an infrequent basis." (R. at 510.) He further opined that Plaintiff had "sitting intolerance of more than 30 minutes at a time" and "walking intolerance of no more than 15 to 30 minutes at a time." (R. at 510.)

In his decision, the ALJ gave great weight to Dr. Mathern's opinion during the post-surgery recovery period, but gave "very little weight" to his September 2013 letter opinion. (R. at 69.) The ALJ explained:

> I give great weight to Dr. Mathern's opinion when he was last treating the claimant in his post-operative recovery period. The record indicates Dr. Mathern last saw [Plaintiff] in November of 2011. I give the opinion very little weight in assessing [Plaintiff's] functional capacity after that post-operative recovery period when the record does not establish that he examined or treated the claimant and I find that by February 20, 2012, within one year of the claimant's alleged onset date he has had the residual functional capacity to perform light work with the limitations in the residual functional capacity finding.

(R. at 69.)

Plaintiff argues that the ALJ erred by failing to give controlling weight to Dr. Mathern's September 2013 letter opinion. (Pl.'s Mem. at 4-6.) Alternatively, if the ALJ did not err by failing to give controlling weight to Dr. Mathern's letter, Plaintiff argues that the ALJ erred by not evaluating the letter according to the factors set forth in the applicable regulations. (Pl.'s Mem. at 6-7.) Defendant responds that the ALJ provided good reasons for discounting Dr. Mathern's September 2013 opinion, because his opinion is inconsistent with other evidence in the record. (Def.'s Mot. for Summ. J. and Br. in Supp. Thereof. ("Def's Br.") (ECF No. 13) at 12-14.) The Court finds that the ALJ erred by failing to sufficiently explain his basis for affording less than controlling weight to Dr. Mathern's letter.

The SSA's regulation defines a "treating source" as "[the claimant's] own physician, psychologist, or other acceptable medical source who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 404.1502. The ALJ must give controlling weight to a treating source's opinion if: 1) it is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and 2) it is not inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); SSR 96-2p. If a medical opinion does not satisfy both factors, the ALJ cannot give controlling weight to the

opinion. SSR 96-2p. To evaluate a medical opinion not entitled to controlling weight, the ALJ must consider the following factors: (1) the length of the treating source relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability based upon the medical record; (4) consistency between the opinion and the medical record; (5) any specialization on the part of the treating source; and, (6) any other relevant factors. 20 C.F.R. §§ 404.1527(c), 416.927(c). Courts generally should not disturb an ALJ's decision as to the weight afforded a medical opinion absent some indication that the ALJ "dredged up specious inconsistencies or has failed to give a sufficient reason for the weight afforded a particular opinion." *Dunn v. Colvin*, 607 F. App'x 264, 267 (4th Cir. 2015) (citations omitted).

In his decision, the ALJ stated that Dr. Mathern was Plaintiff's "treating" neurosurgeon. (R. at 69.) However, the ALJ failed to provide an appropriate explanation as to why Dr. Mathern's opinion deserves less than controlling weight under the applicable regulations. The ALJ simply stated that he gave "great weight" to Dr. Mathern's opinion during the post-recovery period and "very little weight" after the post-recovery period, because Dr. Mathern had not examined Plaintiff since November 2011. (R. at 69.) Before discussing the length and the extent of the treating relationship as the basis for giving less than controlling weight to Dr. Mathern's opinion, the ALJ should have discussed why he decided to give it less than controlling weight. The ALJ never discussed whether Dr. Mathern's opinion was not well-supported by medically acceptable techniques or was inconsistent with other evidence in the record. The Court cannot ignore this gap in the ALJ's decision.

The ALJ's failure to apply the controlling weight test for a treating source to Dr. Mathern's September 2013 letter becomes more troubling, because the record establishes that Dr.

Mathern was a treating source when he wrote the letter. Albeit in a footnote, the Fourth Circuit strongly implied in *Meyer v. Astrue* that a treating physician does not have to be providing medical care to the claimant at the time that he gives an opinion. 662 F.3d 700, 705 n. 1 (4th Cir. 2011). In *Meyer*, the Fourth Circuit noted that the doctor at issue "not only 'treated' [the claimant] but actually performed [the claimant]'s back surgery, observed his post-operative progress for a number of months, and made referrals for physical therapy and pain management." *Id.* The Fourth Circuit held that the Magistrate Judge erred in finding that the doctor was not a treating physician for not having given the opinion while providing medical care to the claimant. *Id.* As the Fourth Circuit noted, the regulation simply defines a treating source as a medical provider who "provides or *has provided* the claimant with medical treatment or evaluation and [ ] has, or *has had*, an ongoing treatment relationship." *Id.* (citing 20 C.F.R. § 404.1502) (emphasis in original).

Here, Dr. Mathern performed Plaintiff's back surgery and observed his progress over several months after the surgery. (R. at 401-03, 460, 462, 464.) The record establishes that Mr. Mathern was a treating source, regardless of when he wrote the letter at issue. The ALJ's decision to afford less than controlling weight to Dr. Mathern's September 2013 letter mandates a discussion of whether it was "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); SSR 96-2p.

Defendant argues that substantial evidence supports the weight that the ALJ afforded to Dr. Mathern's September 2013 letter, because it is inconsistent with other evidence in the record. (Def.'s Br. at 14.) Defendant's argument lacks merit, because the Court cannot "review the record and cure the ALJ's deficiency ourselves." *Fox v. Colvin*, --- F'Appx ---, 2015 WL

9204287, at *4 (4th Cir. Dec. 17, 2015). The Court will not engage in a fact-finding expedition to remedy the ALJ's failure. "A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling," *Id.* at *3, and the ALJ here has failed to provide the Court with this necessary predicate. Because the ALJ failed to sufficiently discuss the weight afforded to Dr. Mathern's opinion, the Court finds that the ALJ erred and recommends that his decision be vacated and remanded for further proceedings.

### B. The ALJ properly assessed Plaintiff's credibility.

Plaintiff argues that the ALJ erred by failing to properly assess Plaintiff's credibility as set forth in *Craig v. Chater*, 76 F.3d 585 (4th Cir. 1996). Specifically, Plaintiff argues that the ALJ failed to properly conduct the second step of the *Craig* test when he found Plaintiff's statements as to the intensity, persistence and limiting effects of his symptoms not entirely credible. (Pl.'s Mem. at 7-9.) Defendant responds that the ALJ provided sufficient reasons for finding Plaintiff's allegations not credible. (Def.'s Br. at 15-17.)

When the ALJ determines a claimant's RFC, the ALJ must incorporate impairments supported by the objective medical evidence in the record and those impairments that are based on the claimant's credible complaints. 20 C.F.R. §§ 404.1529(c); 404.1545(a). Plaintiff's subjective allegations of pain are not, alone, conclusive evidence that Plaintiff is disabled. *Mickles v. Shalala*, 29 F.3d 918, 919 (4th Cir. 1994). In evaluating the claimant's subjective symptoms, the ALJ must follow a two-step analysis. *Craig*, 76 F.3d at 594; SSR 96-7p; 20 C.F.R. §§ 404.1529(a) and 416.929(a). The first step is to determine whether there is an underlying medically determinable physical or mental impairment or impairments that reasonably could produce the individual's pain or other related symptoms. *Craig*, 76 F.3d at 594; SSR 96-7p, at 1-3. If the underlying impairment reasonably could be expected to produce

the claimant's pain, then the second step is to evaluate a claimant's statements about the intensity and persistence of the pain and the extent to which it affects the individual's ability to work. *Craig*, 76 F.3d at 595. The ALJ's evaluation must take into account "all the available evidence," including a credibility finding of the claimant's statements regarding the extent of the symptoms and the ALJ must provide specific reasons for the weight given to the individual's statements. *Craig*, 76 F.3d 595-96; SSR 96-7p, at 5-6, 11.

This Court must give great deference to the ALJ's credibility determinations. *Eldeco, Inc. v. NLRB*, 132 F.3d 1007, 1011 (4th Cir. 1997). The Fourth Circuit has determined that "[w]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" *Id.* (quoting *NLRB v. Air Prods. & Chems., Inc.*, 717 F.2d 141, 145 (4th Cir. 1983)). Therefore, this Court must accept the ALJ's factual findings and credibility determinations unless "a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all." *Id.* (quoting *NLRB v. McCullough Envtl. Servs., Inc.*, 5 F.3d 923, 928 (5th Cir. 1993)).

Here, the ALJ found in the first step of the *Craig* test that Plaintiff's medically determinable impairments could reasonably be expected to cause some of his allege symptoms. (R. at 68.) However, the ALJ found in the second step that Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible for the reasons explained in his decision. (R. at 68.) The ALJ noted that Plaintiff's treatment records did not reflect the severity or frequency of pain that would prevent Plaintiff from performing light work. (R. at 68.) The ALJ also noted that Plaintiff could perform a variety of daily activities despite his subjective complaints. (R. at 68.)

10

First, Plaintiff argues that the ALJ erred by relying on Plaintiff's self-reported daily activities to discount his allegations of pain. (Pl.'s Mem. at 9.) The Court rejects Plaintiff's such assertion, because the SSA regulations explicitly allow the agency and the ALJ to consider Plaintiff's daily activities when evaluating his alleged symptoms and pain. 20 C.F.R. § 404.1529(c)(3) ("Factors relevant to your symptoms, such as pain, which we will consider include: (i) Your daily activities . . . .").

Next, Plaintiff argues that the ALJ erred by discrediting Plaintiff's allegation that he required a walker or a cane after his injury. (Pl.'s Mem. at 7-8.) The ALJ discussed several medical records that show that Plaintiff did not need an assistive device to walk in support of his decision that Plaintiff's allegations of the severity or the frequency of pain were not credible. (R. at 68.) Substantial evidence in the record supports the ALJ's decision.

Plaintiff's medical records support the ALJ's credibility assessment. On May 12, 2011, Dr. Mathern examined Plaintiff for a follow-up appointment after his March 2011 back surgery. (R. at 462.) Dr. Mathern opined that Plaintiff was "generally making steady progress." (R. at 462.) Plaintiff continued to wean down on his medications, taking six Percocet pills a day. (R. at 462.) On physical examination, Plaintiff showed good strength, sensation and reflexes in the lower extremities. (R. at 462.) Dr. Mathern opined that Plaintiff was stable post-operation. (R. at 462.) On July 23, 2011, Plaintiff returned to Dr. Mathern. (R. at 460.) Plaintiff decreased his Percocet intake to four pills a day. (R. at 460.) Plaintiff denied any weakness, numbness or tingling in his legs. (R. at 460.) Plaintiff had good strength in the upper and lower extremities of 5/5 throughout. (R. at 460.) On November 10, 2011, Plaintiff met with Dr. Mathern for a long-term follow-up appointment. (R. at 458.) Even though Plaintiff complained of pain over the area of his surgery, he did not have any other musculoskeletal or neurological complaints.

(R. at 458.) Plaintiff was "virtually off" Percocet. (R. at 458.) On physical examination, Plaintiff again displayed good strength in the lower extremities. (R. at 458.)

On January 29, 2013, Plaintiff saw Jessica Dever, P.A.C. of Lunenbrg Medical Center for depression and back pain (R. at 499.) Ms. Dever noted that Plaintiff could walk unassisted, sit and stand, go to the bathroom with no difficulty and get out of bed on his own. (R. at 499.) Plaintiff was also self-reliant in usual daily activities. (R. at 499.) During a physical examination, Plaintiff exhibited no abnormalities in his cervical, thoracic and thoracolumbar spine. (R. at 500.) Although Plaintiff's lumbosacral spine exhibited tenderness at L1 to L2, it showed no spasm and demonstrated normal motion. (R. at 500.) On February 26, 2013, Plaintiff returned to Ms. Dever for a follow-up appointment. (R. at 496.) A physical examination again revealed normal musculoskeletal system. (R. at 497.) For pain, Ms. Dever prescribed ibuprofen and nothing else. (R. at 496.)

On November 5, 2013, Dr. Hyo Park of Lunenburg Medical Center prescribed a cane for Plaintiff, but as the ALJ noted in his decision, this was merely one month before the administrative hearing on December 4, 2013. (R. at 68, 512.) No other treatment records show that Plaintiff required an assistive device for walking.

Plaintiff's self-reported activities also support the ALJ's assessment of Plaintiff's credibility as to his walking ability. In a Daily Activities Questionnaire dated December 11, 2012, Plaintiff reported that he cooked for himself four to five times a week. (R. at 320.) Plaintiff could take care of his personal needs without assistance. (R. at 320.) Plaintiff had a valid driver's license. (R. at 321.) Plaintiff could use public transportation without assistance. (R. at 321.) During the hearing with the ALJ, Plaintiff testified that he drove 80 miles to the

12

hearing on his own. (R. at 85.) Therefore, the Court finds that substantial evidence in the record supports the ALJ's credibility assessment.

### C. The ALJ did not err in finding that Plaintiff's anxiety and depression were not severe impairments.

Plaintiff argues that the ALJ erred by finding that Plaintiff's depression and anxiety were less than severe. (Pl.'s Mem. at 9.) Defendant responds that the ALJ reasonably concluded that Plaintiff did not have a severe mental impairment. (Def.'s Br. at 17.)

At the second step of the ALJ's sequential analysis, Plaintiff must prove that he has a "severe impairment . . . or combination of impairments which significantly limit[s] [his] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). Under the Act, a severe impairment that entitles one to benefits must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c). Likewise, "[a]n impairment or combination of impairments is not severe if it does not significantly limit [Plaintiff's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a).

The regulations require that Plaintiff be found not disabled at step two if he "do[es] not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement." 20 C.F.R. § 404.1520(a)(4)(ii). Section 1509 requires that Plaintiff's impairment "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509.

Here, the ALJ found that Plaintiff had severe impairments of decompression and fusion from T12 to L2 level. (R. at 65.) However, the ALJ found that Plaintiff's "medically determinable mental impairments of a mood disorder, anxiety disorder and alcohol abuse" were not severe, because "they do not cause more than minimal limitation in [Plaintiff's] ability to

13

perform basic mental work activities." (R. at 65.) Substantial evidence supports the ALJ's determination.

Plaintiff's medical records support the ALJ's decision. On May 15, 2013, Plaintiff met with Dr. Syng Seo of Southside Community Center for a psychiatric evaluation. (R. at 482.) Dr. Seo noted that Plaintiff appeared neat and clean. (R. at 483.) Plaintiff displayed fluent and coherent speech and intact cognition. (R. at 483.) Dr. Seo diagnosed PTSD and Bipolar II Disorder, but recommended medications and psychotherapy for treatment, rather than hospitalization. (R. at 484.) On June 12, 2013, Plaintiff returned to Dr. Seo for a follow-up appointment. (R. at 485.) On examination, Plaintiff did not have any suicidal or homicidal ideation. (R. at 485.) Plaintiff was not self-destructive. (R. at 485.) Plaintiff reported no mental complaints and stated that he had been "doing better." (R. at 485.) Plaintiff appeared calm and relaxed and displayed normal speech and clear thoughts. (R. at 485.)

On August 2, 2013, Plaintiff met with Dr. Manjit Vohra of Southside Community Center, complaining of depression and a lack of motivation. (R. at 488.) Dr. Vohra noted that Plaintiff was alert and cooperative. (R. at 488.) Plaintiff had no suicidal or homicidal ideation. (R. at 488.) He did not suffer from any delusions or hallucinations. (R. at 488.) He displayed fair judgment and insight. (R. at 488.) Dr. Vohra changed Plaintiff's medication regimen and asked him to return in one and a half months. (R. at 488.) On September 13, 2013, Plaintiff returned to Dr. Vohra and appeared depressed, but he denied hallucinations and delusions. (R. at 504.) He displayed fair insight and judgment. (R. at 504.) Dr. Vohra opined that Plaintiff's prognosis was "fair." (R. at 504.) Dr. Vohra diagnosed chronic depression and PTSD, but continued to treat Plaintiff with medications. (R. at 505.)

Plaintiff's daily activities also support the ALJ's determination. In the Daily Activities Questionnaire, Plaintiff reported that he could take care of his personal needs without assistance. (R. at 320.) In a Function Report dated September 6, 2011, Plaintiff reported that he tried to "stay outside a lot." (R. at 294.) He could pay bills, handle a savings account, count change and use a checkbook/money orders. (R. at 294.) He reported socializing with his family and friends every day on the phone and in person. (R. at 295.) He could follow written and spoken instructions fairly well. (R. at 296.) The Court finds that substantial evidence in the record supports the ALJ's decision that Plaintiff's anxiety and depression were not severe.

Plaintiff argues that his Global Assessment of Function ("GAF") score shows that he had more than minimal limitation in the ability to perform basic work activities. (Pl.'s Mem. at 11.) On September 13, 2013, Dr. Vohra opined that Plaintiff had a GAF score of 50. (R. at 505.) Mental health clinicians and physicians use GAF scores to rate social, occupational and psychological functioning of adults, and scores ranging from 41 to 50 indicate serious symptoms or serious impairment in social, occupational or school functioning. AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed. 2000). However, the Court finds that Plaintiff's September 2013 GAF score does not undermine the ALJ's decision, because the latest version of the Diagnostic and Statistical Manual of Mental Disorders has dropped the use of GAF scores, finding that their use has been criticized due to a "conceptual lack of clarity," and "questionable psychometrics in routine practice." AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 16 (5th ed. 2013).

Even if Plaintiff's GAF score would provide the alleged evidential support, the Court finds that the record as a whole supports the ALJ's decision, as discussed above. The ALJ

15

discussed Plaintiff's ability to care for his own personal needs and perform daily activities, citing medical records that support his decision. (R. at 66.) The Court does not "undertake to reweigh conflicting evidence," in determining whether substantial evidence supports the ALJ's decision. *Dunn*, 607 F. App'x at 266 (internal quotation marks omitted.) Therefore, the Court finds that the ALJ sufficiently discussed his decision that Plaintiff's mental impairments were not severe, and that substantial evidence in the record supports his decision.

V. CONCLUSION

For the reasons set forth above, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 10) be GRANTED, that Plaintiff's Motion for Remand be GRANTED (ECF No. 11), that Defendant's Motion for Summary Judgment (ECF No. 13) be DENIED and that the final decision of the Commissioner be VACATED and REMANDED.

Let the clerk forward a copy of this Report and Recommendation to United States District Judge Henry E. Hudson and to all counsel of record.

NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/
David J. Novak
United States Magistrate Judge

Richmond, Virginia
Date: January 11, 2016